(45 Misc. Rep. 47.)

PEOPLE ex rel. BIRMINGHAM v. GROUT, Comptroller.

(Supreme Court, Trial Term, New York County.    September Term, 1904.)

1. MUNICIPAL CORPORATIONS—ABOLITION OF CLERKSHIP—SUSPENSION OF EM-
PLOYÉ—REINSTATEMENT—MANDAMUS.

The position of disbursing clerk in the department of finance in the
city of New York was abolished January 1, 1902, and the name of the
previous incumbent placed at the head of the list of suspended employés.
under municipal civil service rule 42, and Greater New York Charter, §
1543 (Laws 1901, p. 636, c. 466), providing that when an office is abolished
the person holding the same shall be deemed suspended, without pay, and
shall be reinstated within one year thereafter, if there is need for his
services.    The comptroller in April, 1902, reclassified the employés in his
office, and obtained permission from the board of estimate and apportion-
ment and municipal civil service commission to change the title of posi-
tions held by two men in his office from that of assistants to expert ac-
countants to that of disbursing clerks.    From and after September 1,
1902, the two men performed the same duties which the suspended dis-
bursing clerk had previously performed, without passing any civil service
examination for such position.    Held, that an application for mandamus
to compel the comptroller to reinstate the.suspended clerk in his position
should be granted; it appearing that one of the men was still holding
that position, and that the other had died in November, 1903.

2. SAME—TRANSFER OF CLERKS.

Under Civil Service Law, §§ 13, 15 (Laws 1899, pp. 802, 805, c. 370), pro-
viding that no person shall be appointed under any title not appropriate
to the duties to be performed, or transferred to any position subject to
competitive examination, unless he shall previously pass an examination
equivalent to that required for such position, and that no transfer shall
be made from a position in one class to a position in another class, un-
less specially authorized, an attempt of the comptroller of the city of
New York to transfer assistants to expert accountants to the positions
of disbursing clerks was illegal.

3. SAME—EFFECT.

Where the comptroller of the city of New York transferred two as-
sistants to expert accountants to the positions of disbursing clerks, it
was a determination by the comptroller that the services of disbursing
clerks were necessary, and the request to the municipal civil service
commission for permission so to do was equivalent to a request to cer-
tify the names of persons eligible to such positions.

4. SAME.

Where a disbursing clerk was suspended on the ground that there was
no necessity for an employé of that character in the service of the comp-
troller of the city of New York, and he was never lower than second under
the list of suspended employés kept under Greater New York Charter, §
1543 (Laws 1901, p. 636, c. 466), and there were two positions as disburs-
ing clerks to be filled, it was not material that the suspended employé
was not first on such list during the entire time of his suspension, in pro-
ceedings brought by him to compel reinstatement in one of such positions.

5. SAME—DEMAND FOR REINSTATEMENT—MANDAMUS.

Where an employé is taken off from the suspended list, and a vacancy
occurs, entitling him to reinstatement, it is not necessary for him to de-
mand reinstatement before bringing mandamus.

6. MANDAMUS—PARTIES.

Where a clerk was placed on a suspended list under Greater New York
Charter, § 1543 (Laws 1901, p. 636, c. 466), and two vacancies occurred in
the position which he was qualified to fill, in mandamus to compel his

¶ 5. See Mandamus, vol. 33, Cent. Dig. § 44.

reinstatement it was not necessary for him to make the survivor of two men illegally transferred to the position of disbursing clerk a party to the proceeding, where he was entitled to claim the position made vacant by the death of the other of two such men, together with the salary incident to that position which had accrued since the latter's death, and which the city had not paid to any person.

Application by the people, on the relation of John T. Birmingham, for a writ of mandamus to Edward M. Grout, comptroller of the city of New York. Writ granted.

Warren Leslie, for relator.

John J. Delany, Corp. Counsel (William Beers Crowell, Ass't Corp. Counsel), for respondent.

CLARKE, J. The relator seeks reinstatement by mandamus to the position of disbursing clerk in the department of finance, a position in the competitive class of the municipal civil service. He was appointed to such position in July, 1898, and his services were dispensed with on January 1, 1902, for the reason that the position was abolished as unnecessary. The relator's name was thereupon placed at the head of the list of suspended employés, in accordance with rule 42 of the municipal civil service, then in force, and section 1543 of the Greater New York charter (Laws 1901, p. 636, c. 466). The charter provides:

"Wherever in any department or institution an office, position or employment is abolished, or made unnecessary * * * the person or persons legally holding the office or filling the position or employment thus abolished or made unnecessary shall be deemed to be suspended without pay, and shall be entitled to reinstatement in the same office, position or employment, * * * if within one year thereafter there is need for his or their services. * * * It shall be the duty of the municipal civil service commission forthwith to place the names of said persons upon a list of suspended employés for the office, or position or for the class of work in which they have been employed, or for any corresponding or similar office, position or class of work, and to certify the said persons for reinstatement, in the order of their original appointment, before making certifications from any other list."

In the month of April, 1902, and while the relator's name was upon the list of suspended employés, the comptroller undertook a reclassification of the employés in his office. Among the employés in his office were two assistants to expert accountants, holding positions in the exempt class of the municipal civil service, Schedule A, and who had been appointed under the special act to aid the financial administration of the city of New York in the examination of the financial condition of the municipal corporations consolidated by the greater New York charter (Laws 1901, c. 466). These assistants had been appointed in the years 1899 and 1900, and remained in the comptroller's office—one of them until his death on November 17, 1903, and the other is still there employed. The survivor testifies that after a couple of weeks in the bureau for expert accounts he came downstairs to the disbursing bureau, where he worked entering warrants, and occasionally made disbursements; that between the 1st of January, 1902, when the comptroller went into office, and the reclassification, he and the other assistant were stopped from making payments of any warrants; that his time was "made up" at the bureau of expert accountants, where a timebook was kept, although he reported for work to the chief clerk of the disbursing

bureau. When the comptroller undertook the general reclassification, he found these two men, who had been appointed without examination, and were classified in Schedule A, and were drawing pay as assistants to expert accountants, actually at work as clerks in the disbursing bureau. They were directed to stop making disbursements, and, pursuant to the general plan of reclassification, a resolution was passed on April 30, 1902, by the board of estimate and apportionment, changing their titles from assistants to expert accountants to that of disbursing clerks, and changing their salaries from $5 and $6 a day to $1,500 and $1,800 a year respectively. Such resolution was filed with the civil service commission on May 21, 1902. On June 21, 1902, the comptroller wrote the civil service commission, requesting authority from them to change the titles of these men to disbursing clerks. On September 10, 1902, the civil service commission passed a resolution approving the request, and permitting the change as of September 1st. On September 15, 1902, the comptroller notified the civil service commission that, pursuant to such authority, the titles had been changed, to take effect as of September 1, 1902. After the change these men were known as "disbursing clerks," and performed the same duties which the relator had performed as disbursing clerk. It is therefore clear that upon the reclassification of the comptroller's office, and within one year after the suspension of relator, and while his name was on the list of those entitled to reinstatement, as provided by section 1543 of the charter, it appeared that there was need for the services of disbursing clerks. The comptroller did not reinstate the relator, but attempted to transfer two assistants to expert accountants from the exempt class to the competitive class and make them disbursing clerks. Neither the comptroller nor the civil service commission had power to make such transfer. The statutory provisions relating to transfers are sections 13 and 15 of the civil service law (Laws 1899, pp. 802, 805, c. 370). Section 13 provides:

"No person shall be appointed or employed under any title not appropriate to the duties to be performed, and no person shall be transferred to, or assigned to perform the duties of, any position subject to competitive examination, unless he shall have previously passed an open competitive examination equivalent to that required for such position, or unless he shall have served with fidelity for at least three years in a similar position."

Section 15 provides:

"No promotion, transfer or reinstatement shall be made from a position in one class to a position in another class unless the same be specially authorized by the state or municipal commission, nor shall a person be promoted or transferred to a position for original entrance to which there is required by this act or the rules an examination involving essential tests or qualifications different from or higher than those required for original entrance to the position held by such person, unless he shall have passed the examination or attained a place upon the eligible list for such higher position."

The plain purpose of such enactments is to protect the position subject to competitive examination by prohibiting transfers from the exempt to the competitive class, unless the examination required be passed, and the applicant attain a place upon the eligible list for the position sought. It does not appear in this case that any examination

was passed by the men transferred, or that they were on the list of
those eligible for the position of disbursing clerk.

The respondent has put in evidence rule 40 of the municipal civil
service commission. That rule prohibits transfers from one class to
another "unless the same shall be specially authorized by the municipal
commission. * * * Upon the written request of an appointing
officer, stating the essential facts in regard to any proposed transfer,
the commission will, if such transfer be in accordance with law, and
the provisions of these rules, issue its certificate of that fact to such
officer." The transfer is only valid, as stated in the rule itself, if such
transfer be in accordance with law. The statutory provisions govern-
ing transfers were not complied with in the attempted reclassification.
These provisions were passed pursuant to the constitutional mandate
that "appointments and promotions in the civil service * * * shall
be made according to merit and fitness to be ascertained, so far as
practicable, by examinations." Const. art. 5, § 9. To permit the
transfer of persons appointed without examination to positions in the
service subject to competitive examination, by a mere resolution
changing their titles, would defeat the purpose of the civil service and
bring it into disrepute.

The respondent contends further that the relator has failed to show
that there was need for his services, inasmuch as it does not appear
that the respondent demanded from the civil service commission the
submission of a list of the persons entitled to appointment. Matter
of Morrison v. Cantor, 75 App. Div. 480, 78 N. Y. Supp. 385, affirmed
173 N. Y. 646, 66 N. E. 1112, is cited in support of the contention. It
was there held that the suspended employé could not mandamus the
civil service commission and the appointing officer, and compel the
certification of his name and appointment; that it must first appear
that there was need for his services; that the need could only be de-
termined by the appointing officer, as evidenced by his request to the
civil service commission. Mr. Justice Ingraham, at page 484, 75 App.
Div., and page 388, 78 N. Y. Supp., says:

"Under the civil service law, every position where an appointment is to be
made from a name certified by the civil service commissioners, the appoint-
ing officer is required to request from the civil service commissioners a list
of the persons who are entitled to receive the appointment; and, by the sec-
tion of the charter to which attention has been called, the commissioners are
required to certify the names of specified persons for reinstatement before
making certificates from any other list. There is no allegation that the com-
missioners have failed to obey this provision. They have not been asked to
make a certificate for this position, and they have made none. * * *
Until the appointing officer determines to make the appointment or fill the
position, the court is not justified in granting a mandamus requiring him to
forthwith appoint to the position an officer who would be entitled to the ap-
pointment when made. * * * It is only where there is need for his serv-
ices that he is entitled to be reinstated, and that is to be determined by the
appointing officer, to be evidenced by his request to the civil service commis-
sion for the name of the person entitled to the position."

The respondent in this case determined that there was need of dis-
bursing clerks, and evidenced that determination by a written request
to the civil service commission. He did not specifically request the
commission for the name of the person entitled, but himself suggested

the names of persons, and sought authority to appoint such persons. The names he suggested were on a list in the possession of the commission, other than the list on which relator's name appeared. Upon receiving such request, under section 1543 of the charter, it was the duty of the commission to certify persons from the reinstatement list before certifying from any other list. In my opinion, the facts presented by this case are within the rule laid down in Matter of Morrison v. Cantor, supra. By requesting the civil service commission for authority to designate certain persons as disbursing clerks, the respondent, in effect, requested the names of persons entitled to the position. Instead of inquiring whom he might appoint, the respondent asked whether he was authorized to add the names suggested to Schedule B as disbursing clerks. The second question is as much evidence as the first of a determination by the appointing officer that there is need of service, and both questions call upon the commission to certify the names as eligible.

It is urged that the authorization of the appointments is a complete protection to the respondent. The case relied upon is Chittenden v. Wurster, 152 N. Y. 345, 46 N. E. 857, 37 L. R. A. 809, which held that a classification of exempt positions (Schedule A) made by the mayor of a city, presumably in the conscientious discharge of his duty, under the statute directing him to make such classification, until judicially determined to be erroneous, is a protection to the subordinate heads of departments and employés acting thereunder. In People ex rel. Terry v. Keller, 158 N. Y. 187, 52 N. E. 1107, and People ex rel. Sims v. Collier, 175 N. Y. 196, 67 N. E. 309, the same rule was applied to classification by civil service commissions. In those cases the classification was made pursuant to a quasi judicial authority involving the exercise of judgment, and the commissioners, in making up the schedules, were acting within such authority vested in them by statute. But in this case the commission was not acting under its authority to determine the class in which a particular position should be placed. The commission had already determined that disbursing clerks were in the competitive class. In Matter of Donovan v. Cantor, 89 App. Div. 50, 85 N. Y. Supp. 406, the relator insisted that his name should be upon a list certified under section 1543 of the charter. It was there held that a determination by the municipal civil service commission that the duties of the position sought were not similar to those performed by relator was quasi judicial in character, and not reviewable by mandamus. But in the case pending the list provided by section 1543 was already made up, and relator was at the head of the list. Under these circumstances no quasi judicial authority was vested in or exercised by the commission, but, upon there being need of relator's services, he had ipso facto the right to reinstatement by virtue of the statute. The fact that he was not No. 1 on the list during the entire time is immaterial, in view of the fact that it is conceded that he was never lower than second, and that there were two positions as disbursing clerks to be filled. Neither is this a case in which it was incum-

bent upon the relator to give notice of his claim to preference and to demand reinstatement. The cases cited in support of that contention are distinguishable on the ground that special reasons existed entitling the claimant to preference, known to him, but unknown to respondent, as in the case of veterans. But here the relator was placed upon the preferred list, and he could in no way aid his reinstatement by notice or demand, which was dependent solely upon the happening of the event prescribed by the statute— that there should be need of his services within a year of his suspension. But if notice was necessary, sufficient notice was given in the relator's letters to respondent, in which reinstatement is demanded.

The respondent contends that Nelson, the survivor of the de facto holders of the position sought, should be made a party. The relator contends that he is entitled to either of the two positions which were filled by the respondent, as they are identical, and were filled on September 1, 1902, at the same moment. Under these circumstances, it is unnecessary to determine the title of Nelson to his position. The relator may claim the position now vacant, and need not make the incumbent of the other position a party to this proceeding. The position to which relator is entitled was occupied by Crowley until his death, on November 17, 1903. Since his death the position has not been filled, and the salary incident thereto has not been paid by the city to any one. The relator is therefore entitled to reinstatement as of September 1, 1902, and salary accrued since November 17, 1903. Martin v. City of New York, 176 N. Y. 371, 68 N. E. 640.

Ordered accordingly.